## CLARK SMITH, RESPONDENT, *v.* THE MAYOR, ETC., OF THE CITY OF NEW YORK, APPELLANT.

*Legal business of city of New York — by whom conducted — power of corporation counsel to employ additional counsel —* §§ 28, 38, *chap.* 446, 1857 — *Proceedings to collect taxes — chap.* 230 *of* 1843.

It is the duty of the law department of the city of New York to conduct the proceedings for the recovery of the amounts due from delinquent tax-payers, and the corporation counsel is authorized to employ additional counsel to assist him therein.

Where, in pursuance of section 28, chapter 446, of 1857, a sufficient appropriation has been made to pay for services to be rendered to the city of New York, *it seems* that the right to recover for such services will not be defeated by the expenditure of such appropriation for other purposes.

Section 38, of chapter 446, of 1857, requiring a certificate by the head of the appropriate department, as to the necessity of expenditures for which no contract is required, was enacted to regulate the mode in which work required in public improvements should be contracted for and let, and did not include professional services rendered by counsel employed in collecting the amounts due from delinquent tax-payers.

The proceedings against delinquent tax-payers, authorized by section 12, of article 11, chapter 230, Laws of 1843, must be commenced within one year after the return of the warrant to be issued by the receiver of taxes for the collection thereof.

APPEAL from a judgment in favor of the plaintiff, entered on a verdict directed by the court.

*D. J. Dean*, for the appellant.

*John E. Devlin* and *Nelson Smith*, for the respondent.

DANIELS, J.:

The recovery in this case was for the value of professional services, performed by Nelson Smith, in the institution and prosecution of proceedings in the Court of Common Pleas of the county of New York, for the collection of taxes upon personal property from delinquent tax-payers. The services were shown to have been performed, and their value was proven to be the sum allowed for them by the verdict which was rendered under the direction of the court. It appeared that Nelson Smith, the plaintiff's assignor, had been engaged in the performance of services of a similar character before the year 1866. In January of that year, Richard O'Gorman became the corporation counsel of the city, and the assignor was then informed by him that he was not familiar with these cases, and he wished him to go on and take charge of them, and the receiver of taxes to obey his direction about them. Under this employment the services were afterward performed, for which the verdict was recovered, with the approbation and concurrence of the receiver of taxes who continued to send the cases as he had before. By sections 1 and 18 of the revised ordinances of 1866, which were put in evidence on the trial, it was provided that the law department should "have charge of and conduct all the law business of the corporation and of the departments thereof, and all other law business in which the city shall be interested, when so ordered by the corporation," and the counsel to the corporation was authorized " to employ additional counsel to aid in the trial or argument of causes or proceedings of importance, in which the city may be a party interested." The first provision made by this ordinance was no more than a re-enactment by the city, of a previous legislative enactment expressed in the same terms. (Laws of 1857, vol. 1, 882, § 26.) And, under them, all the law business of the corporation and of its departments, was placed in the charge and conduct of the law department. It was other law business in which the city should be interested, and not that of the corporation or of either department, that the law department was only to have the charge and conduct of, when so ordered by the corporation. That in which the city or either department was a party, was wholly and in express terms, placed at once and without further action, in

the charge and conduct of the law department. And it was that in which the city might be merely interested only, which was rendered subject to the further order of the corporation. This is the plain import of the statute and the ordinance; and it placed all the law business of the city and its departments directly in the charge and conduct of the law department, whose chief officer was the counsel of the corporation, and, as such, the power was explicitly given to him to employ additional counsel in proceedings of importance in which the city might be a party interested. These were proceedings of that nature, even if the applications were made in the name of the receiver of taxes. The power to employ additional counsel was not restricted to cases in which the city should be named as a party, but it extended to cases and proceedings in which it was a party interested. And it certainly was so interested in proceedings taken on behalf of one of its departments to enforce payment of the taxes due to it. Under this state of the case, sufficient authority existed for the employment of the plaintiff's assignor, to render it legal and binding so far as the counsel of the corporation was a party to it. He had the right to employ additional counsel to perform the services required by the receiver of taxes, who presided over a part of one of the departments of the city, and who, by his acts, appears to have approved of the employment. It was the law business of one of the departments, and as such, under the express provision of the ordinance, as the city was interested as a party in it, lawfully confided by the counsel of the corporation to additional counsel. And what transpired between him and the plaintiff's assignor, was sufficient to create such an employment.

But it is claimed in behalf of the defendant that the employment was in violation of the prohibition contained in section 28 of chapter 446 of the Laws of 1857, which declared that no expense should be incurred by any of the departments, or officers thereof, whether the object of the expenditure shall have been ordered by the common council or not, unless an appropriation shall have been previously made covering such expense. (Vol. 1, Laws of 1857, 884, § 28.) And if the evidence had not shown a sufficient appropriation, the objection would probably have defeated the plaintiff's case. (*Burns* v. *Mayor, etc.*, 5 N. Y. S. C., 371.)

But the employment commenced, or rather was continued, from the time of the commencement of Mr. O'Gorman's term of office as corporation counsel, in January, 1866; and $59,522 were shown to have been appropriated and raised for the expenses of his department in that year. As this was apparently one of the first engagements made by the law department, and the amount of the appropriation was not exhausted by the disbursements of 1866, it may be reasonably presumed to have included all the compensation · due to the plaintiff's assignor for his services in the proceedings carried on by him to enforce payment of delinquent personal taxes. It does not appear how much of the appropriation remained unexpended at the end of the year 1866, but it does, that it was not all used during that year, and that the residue was paid out in 1867, which was not claimed to have been less than the demand made in this action. If it had been, the fact itself could hardly have been allowed to prevail as a defense, because the right to compensation for services directed under a sufficient appropriation ought not to be defeated by its expenditure for other purposes. Certainly, as the evidence stood upon this subject, there was no such defect in the authority to employ as would disable the plaintiff from maintaining the present action.

It has also been objected that there could be no recovery by the plaintiff, for the reason that a previous legislative enactment provided that no expenditure for work or supplies, involving an amount for which no contract was required, should be made, except the necessity therefor be certified by the head of the appropriate department, and the expenditure be authorized by the common council. (Vol. 1, Laws of 1857, 887.) The section of which this was a part was enacted to regulate the mode in which work required in public improvements should be contracted for and let, and did not include professional services of the nature of those for which compensation was claimed in this suit. The substance of it was, that when contracts were required for the performance of that kind of work, they should either be made, and the work let in pursuance of its provisions, or the necessity for the work should be certified to by the head of the proper department, and the expenditure for it authorized by the common council. For services of the nature of those claimed in this case, different pro-

visions were made. They were, by statute, as well as ordinance, placed under the charge and conduct of the law department, the head of which was empowered to employ additional counsel, when, as was the case in this instance, the city was a party interested in the proceedings.

The services performed were shown by the evidence of the assignor and another witness, sworn on the plaintiff's behalf, to be reasonably worth the sums charged for them. That was contradicted by no one; and on this evidence, as far as the plaintiff recovered at all, he was clearly entitled to those sums. But, to the extent of $232.56, the services were rendered in applications to compel the payment of taxes imposed in 1862 and 1863. All the services were performed in the year 1866, which was more than a year after the persons taxed had been in default for the non-payment of these taxes. The rolls for the taxes were required to be completed and delivered to the receiver of taxes of the city by the fifteenth of September in each year, with warrants for their collection. Persons paying before the first of January were entitled to a reduction, at the rate of seven per cent, from the time of payment to the first of the succeeding February. And as to such as remained unpaid on the first of January, the receiver was required, by public notice, to demand payment on or before the fifteenth of February. On those remaining unpaid after that time, a percentage was to be added, and on the first of March notice was to be given to the persons still in default, and by publication, requiring payment to be made to the receiver on or before the first of April. And if they failed to pay by that time, and the taxes continued unpaid to the fifteenth of that month, then, on filing proof of compliance with those requirements, on the part of the receiver, he was empowered to issue a warrant for their collection, returnable within thirty days from the time of its date. And on its return, which regularly should be made by the middle of May in each year (and it was not shown to have been in either year omitted), the proceedings, by application to the Court of Common Pleas, for which the plaintiff's assignor was employed, were allowed to be taken. That could be done when a person taxed for personal property, exceeding $1,000 in value, neglected or refused to pay the tax, if he had no goods or chattels which could be levied upon

for payment, and reason existed for believing him to have debts, credits, choses in action, or other personal property not taxed elsewhere in the State, and not subject to levy under the warrant. (Laws of 1843, 317–320 §§ 1–12.) This condition of things could not very well appear until the receiver's warrant should be returned. But by its proper return and the giving of the requisite notices, sufficient evidence of their existence would be supplied to warrant the application. And that the statute provided might be made within one year afterward. The provision it made was the only authority which existed for the proceeding; and, consequently, the application could not be postponed beyond the statutory time. By providing that it could be made within one year, it in effect prohibited it after that time. The legislature had the right to limit the time, and they have expressed the law in such terms as to supply clear evidence of the intention to do it. (*Dudley* v. *Mayhew*, 3 Comst., 1; *Sharp* v. *Speir*, 4 Hill, 76.) And under the limit prescribed, the time in which the proceedings could be lawfully commenced would not exceed one year after the return of the warrant. If the duties of the officers were performed as the law contemplated they should be, that would be returned by the middle of each month of May, for the taxes of the preceding year. And in the absence of proof to the contrary, the presumption is in favor of the regularity of official action. The time, therefore, in which proceedings could be taken in court to enforce payment of the taxes of 1862, would expire with the middle of May, 1864, and for the taxes of 1863, with the same period in 1865. As to those taxes there should have been no recovery, for the assignor of the plaintiff was not employed specifically to prosecute proceedings for their payment, but simply for the recovery of those taxes upon which they could properly be instituted. The employment was, in its nature, dependent upon the judgment of the person employed. It was to take measures for the collection of unpaid personal taxes remaining subject to the remedy provided by the statute, and did not include those on which it had been lost by lapse of time. He was employed to give his attention to these matters, which necessarily meant such claims as were the proper subject of legal proceedings. And that, in 1866, could only include the unpaid personal taxes of 1864 and 1865. As to the former, they

could be proceeded for to the middle of May, 1866, and the latter at any time after that during that year. And to the compensation for those services the recovery should have been limited. At the close of the evidence the court directed a verdict for the value of those services, and also those which had been rendered in the cases where the remedy had been extinguished. The defendant excepted to the direction, and that is sufficient to present the plaintiff's right to the verdict which was ordered. It was erroneous in the amount, and for that reason, as the services performed were entirely ineffectual, the judgment should be reversed and a new trial ordered, with costs to abide the event, unless, within twenty days after notice of this decision, the plaintiff stipulate to deduct from the judgment $232.56, the amount recovered for services performed upon the taxes assessed in 1862 and 1863; and in the case of such a stipulation the judgment, as modified by it, should be affirmed, without costs of this appeal.

DAVIS, P. J., and DONOHUE, J., concurred.

Ordered accordingly.